Trevor D. Everett
Nevada Bar No. 15036
COZEN O'CONNOR
500 North Rainbow Blvd., Suite 300
Las Vegas, NV 89107
Tel:     702.470.2318
Fax:    702.470.2354
Email: TEverett@cozen.com

Attorneys for Plaintiff
SCOTTSDALE INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| SCOTTSDALE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>TRANSITIONAL CARE OF LAS VEGAS, LLC,<br><br>Defendant. | Case No.<br><br>**COMPLAINT** |

## COMPLAINT

For its Complaint against Defendant Transitional Care of Las Vegas, LLC ("Transitional Care"), Scottsdale Insurance Company ("Scottsdale") alleges as follows:

## NATURE OF THE CASE

1.  This is an insurance coverage dispute arising out of an insurance policy (the "Policy") issued by Scottsdale to Transitional Care. Subject to its terms, conditions, exclusions, and endorsements, the Policy provides coverage for, among other things, certain claims arising out of an "Incident" (i.e., an act, error, or omission

1

in the providing of "Professional Services") first made against an "Insured" during the Policy's "Policy Period," October 1, 2020 to November 1, 2021 and timely reported to Scottsdale. Such coverage is subject to a $1 million per Claim Limit of Liability and a $3 million aggregate Limit of Liability.

2. On November 2, 2021, Transitional Care was sued in a single lawsuit (the "Underlying Lawsuit") by EH Jane Doe, a disabled individual, now deceased ("Jane Doe"). The Underlying Lawsuit alleges that Transitional Care employee Arrold Jean sexually assaulted Jane Doe multiple times from November 2020 to May 2021 while administering her regular bed baths.  The Underlying Lawsuit alleges respondeat superior, vicarious liability, and negligent hiring, training, retention, and supervision of Mr. Jean by Transitional Care.

3. Transitional Care submitted the Underlying Lawsuit to Scottsdale for coverage under the Policy. Scottsdale agreed to provide a defense to the Underlying Lawsuit subject to a full reservation of rights and subject to the Policy's $1 million per Claim Limit of Liability. Transitional Care contests that the Underlying Lawsuit constitutes a single Claim under the Policy and is therefore subject to the $1 million per Claim limit. Instead, Transitional Care contests that the single Underlying Lawsuit constitutes multiple Claims and, therefore, the full $3 million Limit of Liability is available.

4. By this lawsuit, Scottsdale seeks a declaration that the Policy's $1 million per Claim Limit of Liability applies to the Underlying Lawsuit.

## PARTIES

5. Scottsdale is an Ohio corporation with its principal place of business in Scottsdale, Arizona.

6. Transitional Care is a Nevada limited liability company. Upon information and belief, Transitional Care's members are citizens of Illinois and not citizens of Ohio or Arizona.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between Scottsdale and Defendants and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## FACTUAL ALLEGATIONS

*The Policy*

9. Scottsdale issued the Policy—Senior Care Liability Policy, No. SHS0000418—to Transitional Care for the "Policy Period" of October 1, 2020 to October 1, 2021, later extended to November 1, 2021. A true and accurate copy of the Policy is attached hereto as Exhibit 1.

3

10. The Policy includes a "Senior Care Professional Liability Coverage Form—Claims Made" section (the "PL Coverage Form").

11. The PL Coverage Form is subject to a $1 million Limit of Liability for each Claim and a $3 million Aggregate Limit of Liability.

12. The PL Coverage Form provides coverage under a single Insuring Agreement as follows:

> We will pay up to the applicable Limit of Liability set forth in **Item 3.** of the Declarations on behalf of the "insured" any "damages" that the "insured" becomes legally obligated to pay as a result of a "claim" arising out of an "incident" happening on or after the retroactive date shown in the Declarations and before the end of the "policy period" provided that:
>
> **1.** Such "claim" is first made against the "insured" during the "policy period";
>
> **2.** The "claim" is reported to us in accordance with the provisions of **SECTION VI** of this coverage form; and
>
> **3.** Prior to the effective date of this Policy:
>
> **a.** No "notice manager" knew or should have known of a "claim" or a potential "claim";
>
> **b.** No "insured" had given notice to a prior insurer of a "claim," "related claim" or potential "claim"; or
>
> **c.** No "insured" had given notice to a prior insurer of an "incident" or any "related incident."

(Policy, PL Coverage Form, § I.A.) (bold original).

13. The PL Coverage Form defines "Claim" as: "**1.** A demand for 'damages'; **2.** A civil proceeding; or **3.** An arbitration or other alternative dispute resolution in which 'damages' are alleged against an 'insured' as a result of injury to which this insurance applies." (Policy, PL Coverage Form, § II.F.) (bold original).

14. "Incident" means "an act, error or omission in the providing of 'professional services." (Policy, PL Coverage Form, § II.P.).

15. "Professional Services" includes "**1.** [t]he performance of: **a.** 'Long-term care administrative services'; **b.** 'Healthcare services'; or **c.** 'Beauticians and barbers services'; or **2.** Violation of the 'rights of residents." (Policy, PL Coverage Form, § II.Z.) (bold original). The terms in quotations in the foregoing definition of "Professional Services" are defined in the Policy.

16. As to the Limit of Liability, the PL Coverage Form provides: "Subject to paragraph **B.** below [not applicable here], our Limit of Liability for 'damages' for each 'claim' shall not exceed the amount stated in the Declarations for each 'claim.'" (Policy, PL Coverage Form, § V.A.) (bold original).

17. The PL Coverage Form provides the following "Related Claims Provision":

> If "related claims" are subsequently made against the "insured" and reported to the Insurer, all such "related claims," whenever made, shall be considered a single "claim" first made and reported to the Insurer within the "policy period" in which the earliest of the "related claims" was first made and reported to us.

(Policy, PL Coverage Form, § V.C.2.).

18. "Related Claims" means "all 'claims' arising out of a single 'incident' or arising out of 'related incidents." (Policy, PL Coverage Form, § II.CC.).

19. "Related Incident's" means "all 'incident's' that are, logically or causally connected by any common fact, circumstance, situation, transaction, event, advice or decision." (Policy, PL Coverage Form, § II.BB.).

*The Underlying Lawsuit*

20. On November 4, 2021, Transitional Care was sued in the Underlying Lawsuit (*EH Jane Doe v. Transitional Care of Las Vegas LLC, et al.*, No. A-21-843548-C, District Court of Clark County, Nevada) filed by Jane Doe. On May 11, 2023, a First Amended Complaint was filed in the Underlying Lawsuit, which replaced Jane Doe as plaintiff with Rita Reid, Clark County Public Administrator for the Estate of Jane Doe (the "Underlying Plaintiff"). A true and accurate copy of the First Amended Complaint in the Underlying Lawsuit (the "Underlying Amended Complaint") is attached hereto as Exhibit 2.

21. The Underlying Amended Complaint alleges that Jane Doe had multiple disabilities, including difficulty speaking due to use of a ventilator. As a result, Jane Doe was a resident of Transitional Care prior to her death.

22. Arrold Jean was allegedly an employee of Transitional Care and responsible for bathing Jane Doe on nights and weekends. In conjunction with bathing Jane Doe, Mr. Jean allegedly improperly removed all of Jane Doe's clothing and sexually assaulted her approximately fifteen to twenty times from November 2020 to May 2021.

23. The Underlying Amended Complaint asserts causes of action against Transitional Care for (i) vicarious liability based on Mr. Jean's actions, (ii) negligent hiring, training, retention, and supervision, (iii) respondeat superior for Mr. Jean's actions, (iv) punitive damages under NRS 42.005, *et seq.*, and (v) additional remedies

for neglect/abuse under NRS 41.1395.

*The Coverage Dispute*

24. Transitional Care submitted the Underlying Lawsuit to Scottsdale for coverage under the Policy.

25. By letter dated May 10, 2022, Scottsdale agreed to defend Transitional Care in the Underlying Lawsuit, subject to a full reservation of rights and subject to the Policy's $1 million per Claim Limit of Liability.

26. Transitional Care has contended that the $1 million per Claim Limit of Liability in the Policy does not apply to the Underlying Lawsuit. Rather, the Underlying Lawsuit purportedly constitutes multiple Claims, subject to the Policy's $3 million Aggregate Limit of Liability.

**COUNT I: DECLARATORY JUDGMENT THAT THE UNDERLYING LAWSUIT IS A SINGLE CLAIM SUBJECT TO THE POLICY'S $1 MILLION PER CLAIM LIMIT OF LIABILITY**

27. Scottsdale repeats and realleges the allegations contained in paragraphs 1-26 as if fully set forth herein.

28. The PL Coverage Form defines Claim, in pertinent part, as "[a] civil proceeding." (Policy, PL Coverage Form, § II.F.).

29. The Underlying Lawsuit is a single civil proceeding and, therefore, a single Claim.

30. The Policy's Limit of Liability for any single Claim is $1 million.

31. Additionally, the allegations in the Underlying Lawsuit all arise out of wrongdoing allegedly perpetrated by the same individual (Mr. Jean) against the same resident (Jane Doe) in the same manner (recurring sexual assault during Jane Doe's baths). Accordingly, the Underlying Lawsuit's allegations all arise out of the same Incident or Related Incidents.

32. Thus, even if the Underlying Lawsuit could somehow be divisible into multiple Claims, the PL Coverage Form's Related Claims Provision requires that they be aggregated and treated as a single Claim, subject to the $1 million per Claim Limit of Liability.

33. An actual, present, and justiciable controversy exists concerning application of the Policy's $1 million per Claim Limit of Liability for Underlying Lawsuit.

34. The entry of a declaratory judgment with respect to application of the Policy's $1 million per Claim Limit of Liability to the Underlying Lawsuit is necessary and would be effective to resolve the controversy between the parties.

35. Accordingly, Scottsdale respectfully requests that the Court enter judgment declaring that the Policy's $1 million per Claim Limit of Liability applies to the Underlying Lawsuit.

\*   \*   \*

36. The filing of this Complaint is not intended to and does not constitute a waiver of any of Scottsdale's rights, remedies, and defenses under the Policy or at

law. Additional conditions, limitations, and exclusions of the Policy may exclude or limit coverage for the Underlying Lawsuit.

**PRAYER FOR RELIEF**

**WHEREFORE**, Scottsdale prays that this Court enter an Order declaring that the Policy's $1 million per Claim Limit of Liability applies to the Underlying Lawsuit; awarding Scottsdale its costs, expenses, and attorneys' fees together with pre- and post-judgment interest to the greatest extent allowed by law; and awarding Scottsdale all other relief that the Court deems just and equitable.

Dated: November 16, 2023

Respectfully submitted,

By: _____
Trevor D. Everett
Nevada Bar No. 15036
COZEN O'CONNOR
500 North Rainbow Blvd., Suite 300
Las Vegas, NV 89107
Tel:     702.470.2318
Fax:     702.470.2354
Email:   TEverett@cozen.com

Attorneys for Plaintiff
Scottsdale Insurance Company